UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Michael A. Hammer |
| v. | : | Mag. No. 16-4070 |
| MAXIMO BERAS | : | **CRIMINAL COMPLAINT** |

I, Brian Macdonald, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**SEE ATTACHMENT A**

I further state that I am a Postal Inspector with the United States Postal Inspection Service ("USPIS"), and that this complaint is based on the following facts:

**SEE ATTACHMENT B**

Continued on the attached page and made a part hereof:

_____
Brian Macdonald, Postal Inspector
United States Postal Inspection Service

Sworn to before me and subscribed in my presence,
June 27, 2016 in Essex County, New Jersey

_____
HONORABLE MICHAEL A. HAMMER
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Conspiracy to Commit Bank Fraud

From in or around May 2010 through in or around June 2014, in the District of New Jersey and elsewhere, the defendant,

### MAXIMO BERAS,

did knowingly and intentionally conspire and agree with others to execute a scheme and artifice to defraud a financial institution, as defined in Title 18, United States Code, Section 20, namely Citibank, Bank of America, TD Bank, JP Morgan Chase, and Capital One, whose deposits were insured by the Federal Deposit Insurance Corporation, and to obtain monies, funds, assets, and other property owned by and under the custody and control of Citibank, Bank of America, TD Bank, JP Morgan Chase, and Capital One, by means of materially false and fraudulent pretenses, representations, and promises, contrary to Title 18, United States Code, Section 1344.

In violation of Title 18, United States Code, Section 1349.

## ATTACHMENT B

I, Brian Macdonald, am a Postal Inspector, with the United States Postal Inspection Service ("USPIS"). I have knowledge of the following facts based upon both my investigation and discussions with other law enforcement personnel and others. Because this affidavit is being submitted for the limited purpose of establishing probable cause to support the issuance of a complaint, I have not set forth each and every fact that I know concerning this investigation. Where statements of others are related herein, they are related in substance and part. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

### Background

1. The United States Postal Inspection Service has been investigating a conspiracy in which individuals stole funds from several financial institutions by exploiting certain of the banks' policies that permit funds deposited into customer business accounts by check to be immediately available to the account holder before such checks are processed and cleared. This type of illegal conduct is more commonly referred to as "check kiting." In a check kiting scheme, individuals draw checks on bank accounts knowing that such accounts do not have sufficient funds to support the check (the "Insufficient Funds Check"), and then deposit that check into another account. The individuals then withdraw the funds from the second account, taking advantage of the banks' policy to permit immediate withdrawal of such funds and before the banks can determine that the deposited check was drawn upon an account with insufficient funds. In this manner, the individuals engaged in a check kiting conspiracy are able to steal money from the banks on the basis of false and fraudulent pretenses.

### Defendant MAXIMO BERAS' Check Kiting Conspiracy

2. From in or around September 2010 through in or around June 2014, defendant MAXIMO BERAS participated in a check kiting conspiracy that sought to defraud TD Bank, NA ("TD Bank"), JP Morgan Chase ("Chase"), Citibank, NA (Citibank"), Bank of America ("BoA"), and Capital One Bank (collectively, the "Victim Banks") out of hundreds of thousands of dollars. In summary, defendant MAXIMO BERAS and his co-conspirators, among other things: (a) opened bank accounts at various of the Victim Banks; (b) wrote checks from those bank accounts that they knew contained insufficient funds to support the checks; (c) deposited those Insufficient Funds Checks into other bank accounts at the Victim Banks; (d) withdrew or attempted to withdraw

those funds before the Victim Banks could determine that the checks were written against accounts with insufficient funds.

3. For example, on or about June 12, 2012, a co-conspirator ("Co-Conspirator 1"), who is related to defendant MAXIMO BERAS, opened an account at Capital One Bank, in the name of "Jet Moving Systems Corp." (the "Capital One Account"). On or about March 11, 2013, defendant MAXIMO BERAS was added as a signatory to that account, and thereafter maintained and controlled the Capital One Account.

4. On or about April 15, 2013, after the date on which he became a signatory to the Capital One Account, defendant MAXIMO BERAS wrote a check, which he signed, in the amount of $8,350 from the Capital One Account (the "$8,350 Check"). At or around the time defendant MAXIMO BERAS wrote the $8,350 Check, the Capital One Account contained approximately $2,316.99. The Capital One Account contained insufficient funds because defendant MAXIMO BERAS had, on that same day, cashed a check made out to himself in the approximate amount of $5,000.

5. On or about April 17, 2013, two days after defendant MAXIMO BERAS wrote the $8,350 Check, it was deposited into a TD Bank account ("TD Bank Account #1"). Co-conspirator 1 had previously opened TD Bank Account #1 on or about June 18, 2012, in the name of "Online Store Corp." Law enforcement located a checkbook associated with TD Bank Account #1 in the custody and control of defendant MAXIMO BERAS.

6. Similarly, on or about October 2, 2012, Co-Conspirator 1 opened an account at Citibank in the name of "North Eastern Vanlines Corp" (the "Citibank Account"). Law enforcement located documents for the Citibank Account, including the signatory stamp and checkbook for the Citibank Account in the custody and control of defendant MAXIMO BERAS.

7. On or about April 15, 2013, defendant MAXIMO BERAS wrote a check, which he signed, in the amount of $8,500 from the Citibank Account. At or around the time that defendant MAXIMO BERAS wrote this check, the Citibank Account contained approximately $2,316.99.

8. On or about April 17, 2013, defendant MAXIMO BERAS deposited the $8,500 check into a second TD Bank account ("TD Bank Account #2"). Co-conspirator 1 had previously opened TD Bank Account #2 on or about June 18, 2012 in the name of "Online Store Corp." Law enforcement located a

checkbook associated with TD Bank Account #2 in the custody and control of defendant MAXIMO BERAS.

9. Between on or about April 18, 2013 and on or about April 24, 2013, approximately $15,386.74 was withdrawn or debited from TD Bank Account #1 and TD Bank Account #2.

10. On or about April 22, 2013, TD Bank returned both checks, which had been signed by defendant MAXIMO BERAS, for insufficient funds resulting in a loss to TD Bank of approximately $15,386.74.

11. Defendant MAXIMO BERAS did not only participate in the conspiracy by writing Insufficient Funds Checks. He also withdrew funds from the Victim Banks after the Insufficient Funds Checks had been deposited. For example, on or about June 5, 2014, surveillance images captured by Citibank showed defendant MAXIMO BERAS making multiple cash withdrawals from several different Citibank accounts into which Insufficient Funds Checks had been deposited. On that day alone, defendant MAXIMO BERAS withdrew approximately $25,830 from four separate Citibank accounts. In each case, because the checks that had been deposited into the accounts were Insufficient Funds Checks, there were ultimately insufficient funds in the accounts to cover defendant MAXIMO BERAS' withdrawals. As a result, Citibank sustained a loss on the basis of defendant MAXIMO BERAS' withdrawals.

12. In total, over the course of the conspiracy, defendant MAXIMO BERAS and his co-conspirators caused the deposit of approximately $420,094.94 in Insufficient Funds Checks.

13. From on or about September 10, 2010 through on or about June 6, 2014, defendant MAXIMO BERAS maintained and controlled no less than approximately twenty-seven (27) different accounts at the Victim Banks, namely approximately thirteen (13) bank accounts with TD Bank, five (5) bank accounts with Chase, five (5) bank accounts with Citibank, one (1) bank account with BoA, and two (2) bank accounts with Capital One. At all times relevant to this Complaint, each of the Victim Banks was a financial institution as that term is defined in Title 18, United States Code, Section 20.